E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
MIRI SONG (Cal. Bar No. 291140)
SKYLER F. CHO (Cal. Bar No. 285299)
Assistant United States Attorneys
International Narcotics, Money
  Laundering, and Racketeering Section
     1400 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-2262/2475
     Facsimile: (213) 894-0142
     E-mail:    miri.song@usdoj.gov/
                skyler.cho@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   Plaintiff,<br><br>        v.<br><br>COLE MATTHEW HARRIS,<br><br>   Defendant. | No. CR 23-CR-00095-FMO-1<br><br>GOVERNMENT'S MEMORANDUM REGARDING THE LISTING AND POTENTIAL SALE OF THE SAN MARINO PROPERTY OF DEFENDANT COLE MATTHEW HARRIS |

   Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys MiRi Song and Skyler

//
//
//
//
//
//

F. Cho, hereby files its memorandum regarding the currently unauthorized listing and potential sale of the residence of defendant COLE MATTHEW HARRIS located in San Marino, California, as requested by the Honorable Margo A. Rocconi, United States Magistrate Judge.

Dated: August 28, 2023		Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division

    /s/
_____
MIRI SONG
SKYLER F. CHO
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.   Defendant Should Not Be Allowed to Sell the San Marino Property**

The government opposes, and urges the Court to deny, any application by defendant COLE MATTHEW HARRIS ("defendant") to sell his residence in San Marino, California (the "San Marino Property"). Allowing him to do so will irrevocably undermine any mitigation of defendant's substantial risk of nonappearance and thereby compromise the government's prosecution of this case. If the Court is still inclined to grant the application over the government's objections, the government requests additional time and briefing be allowed to construct necessary safeguards and measures under which the sale should take place.[1]

The sale of the San Marino Property would throw off the carefully calculated balance this Court struck to mitigate against defendant's substantial risk of nonappearance. Defendant was then, and still is, a connected and well-heeled individual who defrauded the United States of millions of pandemic-relief funds, for which he is potentially facing significant restitution payments and imprisonment. Defendant then successfully deceived multiple law enforcement officers and this Court to aid defendant Cindy Chen's ("defendant CHEN") flight from prosecution to China, a non-extradition country. Defendant himself is fluent in Chinese and frequently traveled to China and to surrounding countries. Given all this, there is a substantial risk that defendant will try to join defendant CHEN in China, where they appear to have the connections

---

[1] To this end, an Assistant United States Attorney in the Asset Forfeiture/Financial Litigation Unit will appear in front of this Court to provide the expert counsel necessary to guide the parties and the Court through the sale process.

and resources needed to reside outside the United States and dodge prosecution for their crimes indefinitely. An item that this Court identified as necessary to anchor defendant in this district was the San Marino Property. Cutting that anchor would jeopardize the foundation for the Court's prior determination that defendant can be released pending trial because there exist conditions that can reasonably assure his appearance.

The San Marino Property is highly valuable real estate that helps tie defendant to this district pending prosecution. It is perhaps for this reason that defendant and defendant CHEN attempted to disencumber this property in February (see ECF No. 44). Less than a month after this Court denied that application, defendant CHEN fled to China with defendant's help. Allowing defendant to sell the San Marino Property would increase the risk that defendant too will flee, both because he would no longer have this significant physical tie to the district and because he would gain a sudden influx of cash that may incentivize and facilitate flight from justice. Thus, this attempt to liquidate the San Marino Property should be viewed with extreme skepticism and ultimately rejected because the risks far outweigh the benefits.

This is especially so when considering that defendant and defendant CHEN proposed a substitute "investment property" in Arcadia, California (the "Arcadia Property") in the February application. The value of the Arcadia Property may exceed over $2.5 million. See https://www.redfin.com/CA/Arcadia/315-San-Antonio-Rd-91007/home/7231575. To the extent that defendant is asserting that his finances require the sale of the San Marino Property, the government urges the Court to require defendant to explain why the

Arcadia Property, along with any other alternative assets, is not available for sale.

**II.  If Defendant Is Allowed to Sell, There Should Be Safeguards**

If the Court is inclined to allow defendant to sell the San Marino Property, the government respectfully requests an opportunity to submit a proposed order that authorizes the Clerk of the United States District Court (the "Clerk of the Court") to receive prejudgment payments corresponding to the three deeds of trust naming the Clerk of the Court and imposes conditions on the sale of the San Marino Property.[2]  For example, the government may recommend that, as a condition precedent to the Court's authorization of a sale of the San Marino Property, the Court should require defendant to sign a document consenting to participation in the sale, including the escrow process, by the Court and/or the United States Attorney's Office acting on behalf of the Court.  The government may also recommend that the Court reserve the right to revoke its authorization to sell the San Marino Property upon the recommendation of the United States Attorney's Office.

Additionally, if the Court is inclined to permit the sale of the San Marino Property, the government respectfully requests that, in the addition to any proceeds received by the Clerk of the Court from the sale of the San Marino Property, the Court require defendant to

---

[2] The three deeds of trust naming the Clerk of the Court consist of: (1) the deed of trust posted on behalf of defendant by defendant and defendant CHEN which includes an obligation by defendant and defendant CHEN in the amount of $250,000; (2) the deed of trust posted on behalf of defendant CHEN by defendant and defendant CHEN which includes an obligation by defendant and defendant CHEN in the amount of $250,000; and (3) the deed of trust posted on behalf of defendant by defendant and defendant CHEN which includes an obligation by defendant and defendant CHEN in the amount of $4,000,000.

3

post a significant additional cash deposit to reasonably assure defendant's appearance. As discussed above, merely supplanting the Court's deeds of trust with cash deposits would not reasonably assure defendant's appearance to the same extent that the San Marino Property would. For example, as shown in the table below, if defendant sells the San Marino Property for $16 million (net of expenses), defendant and/or defendant CHEN would receive net proceeds of approximately $3.2 million.

| | |
|---|---|
| Sale Proceeds (Net of Expenses) | $16,000,000 |
| Less: Deed of Trust (Oakhurst Opportunity Lending Fund I, LP) | -$7,200,000 |
| Less: Deed of Trust (Clerk of the Court) | -$250,000 |
| Less: Deed of Trust (Clerk of Court) | -$250,000 |
| Less: Deed of Trust (De Montfort Group) | -$1,100,000 |
| Less: Deed of Trust (Clerk of the Court) | -$4,000,000 |
| Net Proceeds | $3,200,000 |

The severance of defendant's tie to the San Marino Property and a cash infusion of $3.2 million would make defendant more likely to flee. Because the ultimate sale proceeds are uncertain, the government recommends that, as a condition precedent to allowing the sale of the San Marino Property, the Court should require that, in addition to the $4.25 million that the Court would receive because of the deeds of trust posted on behalf of defendant, defendant shall make a cash deposit of $1 million or 50% of the net proceeds from the

sale, whichever is greater.[3] For example, if the sale proceeds (net of expenses) are $16 million, then the Court should require an additional cash deposit of $1.6 million, which is 50% of the $3.2 million of net proceeds (after payments for the multiple deeds of trust).

Admittedly, all this may be a moot point. As a practical matter, even if the Court permits the sale of the San Marino Property, defendant may not be able to successfully sell the San Marino Property unless either the Court or the United States Attorney's Office participates in the sale. A potential buyer may be deterred when, upon opening escrow, he or she learns of the three deeds of trust naming the Clerk of the Court as beneficiary. A potential buyer may also be deterred if the potential buyer learns that defendant CHEN, who is a co-trustee of The Harris Family Irrevocable Trust that owns the San Marino Property, is a fugitive. The participation of the Court, or the United States Attorney's Office acting on behalf of the Court, in the sale may provide some assurance to a buyer that the buyer will ultimately receive clear title to the San Marino Property.

### III. The Government Continues to Oppose Defendant's Request for Less Strict Supervision

Defendant has demonstrated to this Court that he does not deserve the benefit of its doubt. A few months of arguably imperfect compliance since the last time he spectacularly violated this Court's

---

[3] To the extent that the Court is inclined to allow defendant to sell the San Marino Property without requiring defendant to make a substantial cash deposit in addition to the $4.25 million that the Court would receive because of the deeds of trust posted on behalf of defendant, the government respectfully reserves its rights to move for reconsideration of detention and to appeal any adverse decision.

trust by helping defendant CHEN flee from prosecution does not change that. Compliance is expected and the bare minimum. Defendant violated this Court's trust on multiple occasions. In a matter of a less than six months, defendant faked biometric check-ins for defendant CHEN, helped her flee from prosecution to China, lied to United States Probation and Pretrial Services Office ("Pretrial Services") (and thereby this Court), lied to federal agents, surreptitiously extracted $1.1 million from the San Marino Property by signing a deed of trust in that amount naming De Montfort Group as beneficiary, and silently listed it on the market without advising the Court. The government therefore continues to oppose defendant's request for less strict supervision.

Even if listing the San Marino Property did not violate the conditions of his pretrial release, defendant's failure to inform the Court or Pretrial Services of the listing does not inspire trust in light of everything that has transpired in this case so far. Notably: (1) defendant listed the San Marino Property on or about May 17, 2023; (2) 78 days later, on or about August 3, 2023, defendant disclosed the listing to Pretrial Services; and (3) within that 78-day period, neither defendant nor his defense counsel disclosed the listing at the status conference on July 7, 2023, at which the Court granted defendant's request for less restrictive conditions. This Court already gave defendant the benefit of the doubt in April 2023 when the government and the Court learned that, on February 17, 2023, defendant signed a deed of trust in the amount of $1.1 million naming De Montfort Group as beneficiary. Defendant does not deserve the Court's benefit of the doubt again.

//

**IV.  The Government Respectfully Requests Reconsideration of the Denial of the Bond of Defendant CHEN**

Lastly, the government requests that the Court reconsider its denial of defendant CHEN's bond and instead approve her bond <u>nunc pro tunc</u> and then subsequently revoke the bond.  The government has been evaluating whether it can move to forfeit the deed of trust posted on behalf of defendant CHEN by defendant and defendant CHEN which includes an obligation by defendant and defendant CHEN in the amount of $250,000 ("defendant CHEN's deed of trust").  On April 14, 2023, after defendant CHEN fled to China, this Court ordered that defendant CHEN's bond not be approved because: "Bond is not complete as it is missing the surrendering of the most current passport of the defendant.  Defendant has absconded and there is a current arrest warrant in place."  (ECF No. 126.)

An unintended consequence of the Court's denial of defendant CHEN's bond is that defendant and/or defendant CHEN may argue that defendant CHEN's deed of trust cannot be forfeited because defendant CHEN's bond was not approved.  To obviate this impediment to forfeiting defendant CHEN's deed of trust, the government respectfully requests that the Court approve defendant CHEN's bond <u>nunc pro tunc</u> and then subsequently revoke the bond.  This would best serve the interest of justice and preclude defendant CHEN from benefitting from her illegal actions.  Defendant CHEN deliberately caused the delay in the approval of her bond by refusing to surrender her most current passport so that she could use it to flee to China.  She and defendant should therefore not receive a windfall in the amount of $250,000 because of deceitful delay tactics.