UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CRIMINAL MINUTES – GENERAL

Case No.  2:23-cr-00095-FMO-1                                              Date:  August 31, 2023

Present:  The Honorable Margo A. Rocconi, United States Magistrate Judge

Interpreter:  N/A

| Valerie Velasco | N/A | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Assistant U.S. Attorney |

| U.S.A. v. Defendant(s) | Present | Cust | Bond | Attorney(s) for Defendant(s): | Present | App | Ret |
|---|---|---|---|---|---|---|---|
| N/A | | | | N/A | | | |

**Proceedings:**  **(IN CHAMBERS) ORDER RE: REQUEST FOR MODIFICATION OF CONDITIONS OF RELEASE**

   Before the Court is the question of whether Defendant Cole Harris ("Defendant") should have his bond conditions modified to require less stringent supervision and/or to accommodate the sale of his residential property, which secures a substantial part of Defendant's bond.  See CM/ECF Docket No. ("Dkt.") 171.  The parties have submitted briefing.  Dkts. 172–73.  For the reasons discussed below, the Court **DENIES** Defendant's requests.

## I.
## SUMMARY/BACKGROUND

   The Court has summarized the proceedings in this case at length in its April 5, 2023 order.  Dkt. 119.  In that order, the Court found that there was probable cause that Defendant obstructed justice by making false statements to pretrial services and assisting codefendant Chen to make false biometric check-ins, which allowed her to abscond.  Id. at 13–19.  Nonetheless, the Court found that there were a combination of conditions of release that would ensure Defendant would not flee or pose a danger to the community.  Id. at 19–21.  Accordingly, the Court denied the petition to revoke Defendant's bond, and ordered him released on the same conditions as previously ordered with the following modifications:

   Defendant shall post an additional appearance bond totaling $4,000,000 secured by the deed to his San Marino residence. Defendant shall also post the following bonds totaling $385,000:

   (1) $200,000, secured by a deed of property and accompanying affidavit with justification signed by Cheryl Dufrain, Defendant's mother;

   (2) $20,000, secured with an affidavit of surety without justification signed by Jasmine West, mother to Defendant's third child;

   (3) $10,000, secured with an affidavit of surety without justification signed by Maxim Peranidze, Defendant's friend;

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CRIMINAL MINUTES – GENERAL

(4) $20,000, secured with an affidavit of surety without justification signed by Pamela West, mother to Jasmine West; and

(5) $135,000, secured by a deed of property and accompanying affidavit with justification signed by Juliann Timmer Beebe, Defendant's Aunt.

Travel is restricted to the Central District of California.

Defendant shall be subject to the strictest monitoring conditions possible, including a GPS ankle monitor and home incarceration, with the exception of religious and medical obligations, attorney visits, medical obligations of the children, and other emergency childcare obligations.

Defendant shall not transfer, give away, or sell any asset exceeding a value of $1000, except for payments to Defendant's attorneys, without the approval of the Court. Defense Counsel will submit to the Court, under seal, a list of Defendant's recurring monthly expenses that exceed $1000 for continuous approval.

Within forty-eight (48) hours of his release, Defendant shall have the security cameras on his property operational and on 24 hours a day, 7 days a week.

Id. at 22. The Court ordered Defendant released to pretrial services on April 14, 2023. Dkt. 123.

On July 7, 2023, due to Defendant's apparent compliance with his conditions of release, the Court modified Defendant's bond to require home detention, only. Dkt. 161. Defendant was allowed to meet for business at his employment location and at other locations, provided that he notified Pretrial Services of the address of the location and length of time for the meetings. Dkt. 162 at 5. Defendant was also allowed to go to court appearances, including for his civil case, and to his children's medical appointments and sports events. Id. Defendant was allowed, in rare circumstances, to give less than twenty-four (24) hours' notice to Pretrial Services to leave the house for an unforeseen event within the categories described above. Id. The Court also ordered Pretrial Services to submit monthly expense reports to the Court that reflected Defendant's submissions to their office. Dkt. 161. The Court also ordered Defendant to submit a summary of financial transactions to the Court quarterly. Id.

At the August 21, 2023, status conference, Defendant requested that the bond be modified to require less strict supervision. Dkt. 171. Also at the conference, Pretrial Services made the Court aware that Defendant had listed the San Marino property for sale, despite the fact that the property is encumbered by Defendant's bond. Id. The Court ordered the parties to submit briefs on their position on the potential sale of the property. Id.

The parties submitted their briefs on August 28, 2023. Dkts. 172, 173. The Government argues that the Court should not allow the sale of the San Marino property because it "would throw off the carefully calculated balance this Court struck to mitigate against defendant's substantial risk of nonappearance." Dkt. 172 at 3. The Government notes that the San Marino property is a highly valuable asset that helps physically tie the Defendant to the Central District and argues that, given the Court's previous findings regarding Defendant's conduct in helping codefendant Chen to abscond, the attempt to sell the property should be "viewed with extreme skepticism." Id. at 4. The Government also notes that Defendant has another property in Arcadia valued at something close to $2.5 million, and thus to the extent Defendant is arguing the sale of the San Marino property is motivated by financial need, he could sell the Arcadia property instead. Id. The Government also requests that, if the Court allow

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CRIMINAL MINUTES – GENERAL

Defendant to sell the San Marino property, "safeguards" should be put in place, including:

(1) An order authorizing the Court/the government to participate in the sale and reserving the right for the Court to reject the sale; and/or

(2) An order requiring the Defendant to post a significant cash deposit in addition to the value of the bonds secured by the San Marino property.

Id. at 5–7. The Government also opposes Defendant's request for less strict supervision. Id. at 7–8. Finally, the Government requests that the Court approve codefendant Chen's bond nunc pro tunc and subsequently revoke it, in order to assist the Government should it move to forfeit the deed of trust posted on behalf of Chen. Id. at 9.

Defendant submits a declaration from bail agent James DeMayo, in which DeMayo describes his experience with the process of selling a property secured by a bond. Dkt. 173-3. DeMayo explains that no sale of the San Marino property could close until the property was cleared of all encumbrances, which would require one or several orders from the Court. Id. Specifically, in DeMayo's prior experiences, the Court typically orders the defendant to post a cash surety in the bond amount from the escrow proceeds of the sale, which would allow the Clerk to lift the lien thereby allowing the sale to complete. Id. The Court could then hold the cash surety in place of the property bond, or substitute a different property. Id. Defendant also submits two (2) orders from other judges in this district where the judges allowed the sale of properties securing bonds employing the procedure outlined by DeMayo. Dkts. 173-1, 173-2. Defendant also takes issue with the Government's suggestion that it be involved with the sale, as well as several other of the Government's comments. Dkt. 173.

## II.
## DISCUSSION

The Bail Reform Act, which governs release pending trial, "mandates release of a person facing trial under the least restrictive condition or combination of conditions that will reasonably assure the appearance of the person as required." United States v. Motamedi, 767 F.2d 1403, 1405 (9th Cir. 1985) (citing 18 U.S.C. § 3142(c)(2)). Further, a judicial officer may "at any time amend the order to impose additional or different conditions of release." 18 U.S.C. § 3142(c)(3).

When modifying pretrial release conditions, courts must remain "mindful that such conditions continue to satisfy the goals of the Act to reasonably assure a defendant's appearance at his or her trial and the safety of the community." United States v. Wei Seng Phua, No. 2:14-cr-00249-APG (PAL), 2015 WL 127715, at *1 (D. Nev. Jan. 8, 2015) (citing 18 U.S.C. § 3142(c)(3), (f)–(g)). Thus, courts must consider the following statutory factors when modifying pretrial release conditions: "(i) the nature and circumstances of the offenses charged, (ii) the weight of the evidence against the defendant, (iii) the history and characteristics of the defendant, and (iv) the nature and seriousness of the danger to the community." United States v. Granados, No. CDCR 20-00019-CJC, 2020 WL 3871448, at *2 (C.D. Cal. July 9, 2020) (denying defendant's motion for review of detention order where the defendant presented a danger to the community and a flight risk); see also United States v. Smith, No. CR-12-1298-PHX-GMS (ECV), 2012 WL 3776868, at *3 (D. Ariz. Aug. 31, 2012) (explaining that courts must consider the four factors set forth in § 3142(g) when amending pretrial release conditions).

Ultimately, given the history of the Defendant's conduct in this case, for other reasons discussed in the Court's discussion of the statutory factors in its April 5, 2023 order, the Court cannot find that modification of the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CRIMINAL MINUTES – GENERAL

release conditions are warranted at this time—either to allow for less strict supervision or to permit the sale of the San Marino property.

The Court notes that Defendant has not explicitly requested modification of his conditions to allow the sale of the San Marino property. Defendant has signed an Affidavit of Surety, where he promised under oath "not to transfer or encumber [the San Marino property] until final disposition of this case and exoneration of the bond by Order of the Court." Dkts. 136–37. Furthermore, as a condition of his release, Defendant is prohibited from selling or transferring any asset valued at $1000 or more without notifying or obtaining permission from the Court. Dkt. 148. Defendant's unpermitted listing of the property for sale clearly demonstrates his intent to sell—indeed, Defendant admits in his brief that he intends to sell the property. Dkt. 173 at 1. Defendant's listing of the property for sale clearly violates the spirit, if not the letter, of both Defendant's obligations as a surety and the conditions of his release.

Defendant maintains that any request for permission to sell the property is not yet ripe, given that there is no specific offer on the table. Apparently, Defendant argues that he would have sought permission when the appropriate time came. However, given the Defendant's history with the Court in this case, as well as the consistent opportunities for frequent communication with the Court concerning his finances, the Court would expect Defendant to keep the Court apprised of his intent to sell such a high-value asset, particularly where that asset is securing the lion's share of Defendant's bond. And yet, though Defendant apparently listed his house for sale over three (3) months ago, Defendant did not seek permission or even notify the Court of his intent to sell, despite the fact that he had multiple obvious opportunities to do so, including at the July 7, 2023 status conference.[1] Indeed, in one of the Central District cases that Defendant himself cites, the defendant requested permission to sell the encumbered property before there was any pending offer. See United States v. Tauber et al., 8:18-cr-0140-JLS, Dkt. 139 at 3. Notably, though Defendant argues that the Government would obviously oppose any vague request to sell as premature, the Government did not oppose the defendant's request in Tauber. Still, the defendant properly filed an ex parte application to modify the conditions of his release, which included argument regarding justification for the modification. The Court does not have the benefit of any such argument here.

In any case, even if Defendant's argument that the listing of his house for sale has not yet technically violated the conditions of his bond or his Affidavit of Surety were persuasive, Defendant's failure to notify the Court of his intent to sell does not inspire trust. This is particularly true where Defendant has already violated the above-cited clause of his Affidavit of Surety by taking out a loan on the San Marino property, see Dkt. 123, and where there was already a suspicious attempt to substitute a different property for the San Marino property just before codefendant Chen absconded, see Dkt. 119 at 17. Ultimately, the Court tends to agree with the Government that securing Defendant's valuable residential property in the Central District is a critical piece of the conditions of his release. Furthermore, Defendant has not demonstrated why selling the San Marino property is necessary to ameliorate his financial strains, particularly where it is documented that he has other valuable property unencumbered by a lien from this Court. Nor has Defendant demonstrated that his flight risk has diminished significantly enough to justify this significant modification of his conditions of release. Accordingly, to the extent Defendant's admission of his intent to sell could be construed as a request to modify his conditions of release to

---

[1] In fact, Defendant has discussed lesser financial transactions and a hypothetical financial plan with the Court in camera on two (2) occasions. The Court would think that a potential sale of the San Marino property would be even more noteworthy than any of the items Defendant has brought up with the Court previously.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CRIMINAL MINUTES – GENERAL

allow the substitution of the San Marino property for a cash bond or other property, this request is **DENIED**.[2]

For similar reasons, Defendant's request for less stringent monitoring conditions is **DENIED**, without prejudice to renewal after Defendant demonstrates continued and strict compliance with his conditions of release.

Finally, though the Court is inclined to grant the Government's request to approve codefendant Chen's bond nunc pro tunc and subsequently revoke the bond, the Court finds that this is not the appropriate vehicle for the Government to make such a request. If they so desire, the Government may make a separate formal motion using the appropriate case number, in order to give proper notice to codefedant Chen and allow Defendant's counsel to properly respond with their position, should they have one. Any motion should include briefing on the Court's authority to approve codefendant Chen's bond nunc pro tunc, particularly where the bond was incomplete (albeit by Chen's own doing).

### III.
### ORDER

Accordingly, the Court **DENIES** Defendant's request to modify his conditions of release to allow for less strict supervision and the sale of the San Marino property, as well as the Government's request for the Court to approve Chen's bond nunc pro tunc. The Court sets a further status conference for **September 25, 2023 at 11:00 a.m.**

**IT IS SO ORDERED.**

Initials of Deputy Clerk   :vv

---

[2] That being said, the Court acknowledges that, given the high value of the property, finding a potential buyer could take some time—perhaps even longer than it will take to resolve this case. Therefore, notwithstanding the Court's finding that Defendant should have notified the Court of his intent to sell the property, the Court will not require Defendant to remove the property listing. Defendant should promptly notify the Court of any developments, and is required to make a formal request for modifications of conditions of release immediately should Defendant consider any offers. The Court makes no guarantee that any such request will be granted.